ELIZABETH ABIGAIL JAMES
c/o Post Office Box 10618
Casa Grande, Arizona 85130
Email: lizbethjames777@gmail.com
Phone: 480-253-9028

Elizabeth Abigail James, In Propria Persona

UNITED STATES DISTRICT COURT

FOR ARIZONA

| | |
|---|---|
| ELIZABETH ABIGAIL JAMES,<br>    Plaintiff,<br><br>v.<br><br>CAESARS ENTERTAINMENT CORPORATION,<br>    Defendant,<br>_____/ | No. 2:19-CV-01310-JAT<br><br><br>AMENDED COMPLAINT |

Elizabeth Abigail James, Plaintiff, sues the above Defendant for monetary and punitive damages and states:

JURISDICTIONAL ALLEGATIONS

1. This is an action for damages in excess of $75,000.

2. At all times material to this lawsuit, the Defendant, CAESARS ENTERTAINMENT CORPORATION, is incorporated in the State of Delaware, with principal place of business located at One Caesars Palace Drive, in the city of Las Vegas, in Clark County, in the State of Nevada, and conducts activities through its trademarks/brands, whether via itself, its subsidiaries, its pass-through limited liability companies, or its partnerships, at over 40 properties nationally and internationally, including the State of Arizona. See "EXHIBIT A" attached.

3. At all times material to this lawsuit, the Plaintiff maintains citizenship in Arizona at Pinal County.

4. All acts necessary or precedent to the bringing of this lawsuit occur or accrue in: Clark County, Nevada; Cherokee County, North Carolina; and various other counties and states where

the World Series of Poker® (WSOP®) Circuit is held and operated per Caesars Entertainment Corporation and its trademark.

5. This Court has jurisdiction.

## GENERAL FACTUAL ALLEGATIONS

1. In or around March, 2015, the Plaintiff applied for employment with Caesars Entertainment to deal the World Series of Poker® (WSOP®).

2. The Plaintiff was invited by the Caesars Entertainment human resources staff to audition as a tournament poker dealer for the Rio WSOP® Tournament for 2015.

3. Phil Miller was the human resource contact during the WSOP® for 2015.

4. The audition took place at the Rio All-Suite Hotel & Casino® in Las Vegas, Nevada.

5. The audition consisted of both (1) visual observation of tournament poker dealing and chip handling skills and (2) verbal examination of tournament poker dealing and tournament rules.

6. The tournament and poker dealing rules were based on the WSOP® Official Dealer Reference Guide for 2014.

7. The Plaintiff passed the audition score.

8. The audition results were noticeably biased in favor of four (4) White male applicants as opposed to the two (2) female applicants – one White female and the Plaintiff, a non-White female.

9. From May 2015 to July 2015, the Plaintiff dealt and completed the WSOP® Tournament.

10. The Plaintiff dealt various tournaments at various casinos throughout the rest of 2015 and the first part of 2016.

11. The Plaintiff received information that once a dealer dealt the WSOP®, the dealer is usually not required to audition again as long as the dealer deals the WSOP® each year.

12. The Plaintiff applied to deal the Rio WSOP® for 2016 and Plaintiff was rejected for re-hire, re-audition, and re-interview.

13. The Plaintiff applied to deal the Goliath Poker Tournament at Planet Hollywood® for 2016 and Plaintiff was accepted without an audition.

14. The Plaintiff applied to deal the WSOP® Circuit at Harrah's® Atlantic City for 2016 and Plaintiff was accepted without an audition.

15. The Plaintiff applied to deal the Rio WSOP® for 2017 and Plaintiff was rejected for re-hire, re-audition, and re-interview.

16. The Plaintiff applied to deal the Goliath Poker Tournament at Planet Hollywood® for 2017 and Plaintiff was accepted without an audition.

17. The Plaintiff applied to deal the Rio WSOP® for 2018 and Plaintiff was rejected for re-hire, re-audition, and re-interview.

18. The Plaintiff applied to deal the Goliath Poker Tournament at Planet Hollywood® for 2018 and was accepted without an audition.

19. The Plaintiff applied to deal the Goliath Poker Tournament at Planet Hollywood® for 2019 and was accepted without an audition.

20. Phil Miller is no longer the human resource contact for Rio WSOP® in 2019.

21. The Plaintiff applied to deal the Rio WSOP® for 2019 and received an email with an opportunity to deal the Rio WSOP® in 2019 provided the Plaintiff successfully completes a phone audition.

COUNT ONE:  COLLUSION

22. The Plaintiff re-alleges and re-states the foregoing jurisdictional allegations and general factual allegations.

23. During the WSOP® in 2015, the Plaintiff complained to the Rio WSOP® Dealer Manager, Kim Smith, regarding a young White male dealer whose language in the breakroom was offensive and against written policies.

24. The Plaintiff received an unfair Final Written Warning from Amy Miller, the dealer coordinator.

25. The Plaintiff requested to meet with Amy Miller and Heather Ohlman, another dealer coordinator, to discuss the write-up.

26. The Plaintiff was told by Amy Miller and Heather Ohlman that Kim Smith was the person who demanded the write-up.

27. During the 2015 Rio WSOP® Plaintiff saw a posting naming Joanne Douglas as the contact for dealers interested in dealing the WSOP® Circuit.

28. After completing the 2015 Rio WSOP® tournament the Plaintiff started dealing the WSOP® Circuit, beginning with Harrah's Cherokee in Cherokee County, North Carolina.

29. From October 2015 to November 2015 the Plaintiff dealt, for the second time, the WSOP® Circuit at Harrah's Cherokee.

30. During the Cherokee tournament listed in #29 above, the Plaintiff reported an incident to Dennis Jones, Tournament Director, regarding verbal abuse the Plaintiff received from Allen DOE, tournament floor staff.

31. During the Cherokee tournament listed in #29 above, the Plaintiff reported another incident to Dennis Jones regarding the overwhelming smell of marijuana in the breakroom.

32. False and unproved damaging statements as to the Plaintiff's dealing skills and attitude were made and reported by Jessica Hudson and Allen DOE.

33. The Rio WSOP® tournament poker dealing staff of dealer coordinators and floor personnel generally consist of the same people who participate and/or are in charge of the WSOP® Circuit.

34. Several of the Rio WSOP® tournament poker dealing staff of dealer coordinators and floor personnel live outside of Las Vegas, Nevada.

35. Joanne Douglas has worked the Rio WSOP® and handled the money.

36. Allen DOE usually serves as a floor person and tournament manager for the Rio WSOP®.

37. Kaitlin DOE has acted as a dealer coordinator for WSOP® Rio in 2015.

38. Kaitlin DOE serves as a dealer coordinator for Seminole Hard Rock Tournament for which the Plaintiff was hired to deal in 2016.

39. Patrick DOE serves as floor staff for WSOP® Rio.

40. Patrick DOE serves as dealer coordinator and floor staff for Seminole Hard Rock Tournament for which the Plaintiff was hired to deal in 2016.

41. Some of the floor persons and/or dealer coordinators who work for WSOP® Circuit events and other tournaments usually also work as dealers, as floor staff, or as dealer coordinators for the Rio WSOP®.

42. Phil Miller stated to the Plaintiff that there was a "team" or "committee" that decides which dealers are approved for hire or re-hire.

43. Phil Miller refused to give reasons, proof, or evidence to the Plaintiff for being rejected to deal the WSOP® in 2016, 2017, and 2018.

44. Phil Miller refused to state to the Plaintiff the criteria the "team" or "committee" used to determine which dealers are approved for hire or re-hire.

45. Phil Miller refused to state to the Plaintiff the names of the "team" or "committee" members used to determine which dealers are approved for hire or re-hire.

46. The Plaintiff has been unable to gain another opportunity to deal the WSOP® Circuit from 2016 to January, 2019.

47. The estimated average yearly amount a tournament dealer can make dealing the WSOP® Circuit during the year, including the WSOP® Tournament where the Main Event occurs from May to July is $60,000.

48. Due to Collusion and defamatory remarks by the colluding parties, the Plaintiff was not given opportunities to deal other available tournaments for which the colluding parties worked and/or were affiliated.

49. The Plaintiff lost out on an additional estimated average yearly amount of $40,000 that the Plaintiff could have earned dealing other tournaments for which Collusion by the Defendants prevented.

50. The Plaintiff lost out on opportunities to ever be promoted or work as a dealer coordinator, tournament floor staff, or tournament manager.

51.   As a proximate result, the Plaintiff suffered substantial financial loss for the three years of at least $300,000.

WHEREFORE the Plaintiff demands monetary and punitive damages against the Defendant, together and with such further relief as the Court may deem reasonable and just under the circumstances.

## COUNT TWO:  TORTIOUS INTERFERENCE

52.    The Plaintiff re-alleges and re-states the foregoing jurisdictional allegations and general factual allegations.

53.   The Plaintiff set a goal to deal the WSOP® and to deal the WSOP® Circuit both nationally and internationally throughout her retirement years.

54.   Due to the allegations in Count One: Collusion, the Defendant interfered with the Plaintiff's enjoyment of continuing to deal the WSOP®.

55.   The Plaintiff lost out on the advantage held and the money Plaintiff would have earned for the years 2016 to 2019.

56.   Due to Defendant's interference resulting in Plaintiff's financial loss, Plaintiff was forced to retire early at age 62 for lack of money.

57.   Plaintiff lost out on the opportunity to retire at age 66 or later to receive higher Social Security benefit amount.

58.   Plaintiff lost out on opportunity to receive entire Social Security benefit amount in one lump sum.

59.   As a proximate result, the Plaintiff suffered substantial financial loss.

WHEREFORE the Plaintiff demands monetary and punitive damages against the Defendant, together and with such further relief as the Court may deem reasonable and just under the circumstances.

## COUNT THREE:  CONSTRUCTIVE FRAUD

60.   The Plaintiff re-alleges and re-states the foregoing jurisdictional allegations and general factual allegations.

61. On two separate occasions during the end of the WSOP® Cherokee Circuit tournaments in 2015, the Plaintiff witnessed Joanne Douglas and Dennis Jones accept envelopes of money from a recurring chip runner.

62. There has never been full disclosure to the dealers to account for all of the money that is taken in during the tournaments.

63. The dealers have been short-changed in the reported money allocations whereby floor personnel and/or managers have received money that rightfully belongs to the dealers.

64. The down-rate for the dealers have been misrepresented and/or fraudulently manipulated.

65. As a proximate result, the Plaintiff suffered substantial financial loss.

WHEREFORE the Plaintiff demands monetary and punitive damages against the Defendant, together and with such further relief as the Court may deem reasonable and just under the circumstances.

### COUNT FOUR:  INFLICTION OF EMOTIONAL DISTRESS

66. The Plaintiff re-alleges and re-states the foregoing jurisdictional allegations and general factual allegations.

67. The Plaintiff experienced emotional trauma and embarrassment from the treatment from being rejected and banned from Rio WSOP® and WSOP® Circuit.

68. The Plaintiff experienced emotional trauma and embarrassment from the treatment from being rejected and banned from other tournaments for which the colluding staff worked and/or were affiliated.

69. The Plaintiff experienced lack of sleep and loss of appetite due to the rejection by Rio WSOP® and WSOP® Circuit staff.

70. The Plaintiff experienced temporary homelessness due to Plaintiff's loss of money from not being able to deal the Rio WSOP® and Circuit tournaments after 2015.

71. The rejection to deal the tournaments resulted in the Plaintiff's loss of confidence in the Plaintiff's dealing skills.

72. After being continually rejected to deal the WSOP® and other Circuit tournaments, the Plaintiff experienced bouts of anger, depression, anxiety, and hopelessness.

73. After being continually rejected to deal the Rio WSOP® and other Circuit tournaments, the Plaintiff experienced bouts of extreme fatigue and lack of motivation.

74. The infliction of emotional distress temporarily impaired the Plaintiff's desire to continue to seek out poker dealing jobs throughout the year.

75. As a proximate result, the Plaintiff suffered substantial financial loss and health impairment.

WHEREFORE the Plaintiff demands monetary and punitive damages against the Defendant, together and with such further relief as the Court may deem reasonable and just under the circumstances.

Dated this 19th day of July, 2019.

By: */s/ Elizabeth Abigail James*
In Propria Persona
ELIZABETH ABIGAIL JAMES, Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on July 19, 2019, I electronically transmitted the above-referenced document to the Clerk's Office via the CM/ECF System for filing and transmittal of a Notice of Electronic filing to the following CM/ECF registrants:

FENNEMORE CRAIG, P.C.
Shannon S. Pierce (Nevada Bar No. 12471)
Travis A. Pacheco (No. 026337)
2394 E. Camelback Road, Suite 600
Phoenix, Arizona 85016
Telephone: (602) 916-5000
Email: tpacheco@fclaw.com
Attorneys for Defendant
CAESARS ENTERTAINMENT CORPORATION

/s/Elizabeth Abigail James
In Propria Persona
ELIZABETH ABIGAIL JAMES, Plaintiff