**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Elizabeth Abigail James, | No. CV-19-01310-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Caesars Entertainment Corporation, | |
| Defendant. | |

Pending before the Court is Defendant Caesars Entertainment Corporation's ("Defendant") Motion to Dismiss (Doc. 23) Plaintiff Elizabeth James's ("Plaintiff") Amended Complaint under Federal Rules of Civil Procedure ("Rules") 12(b)(1), (2), (3), and (5), and 28 U.S.C. § 1406(a). Plaintiff has responded, (Doc. 24), and Defendant has replied, (Doc. 25). The Court now rules on the motion.

I. **BACKGROUND**

The following facts are either undisputed or recounted in the light most favorable to the non-moving party. *See Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). In March 2015, Defendant invited Plaintiff to Las Vegas to audition as a dealer for the World Series of Poker Tournament ("WSOP") at the Rio hotel. (Doc. 21 at 2). Defendant offered Plaintiff the job after her audition, despite Plaintiff's contention that white male applicants received particularly favorable scores. (*Id.*). Plaintiff also heard that she would not need to re-audition in the future so long as she dealt the WSOP every year. (*Id.*).

| | |
|---|---|
|1| During the 2015 WSOP, Plaintiff complained to a manager about a white male |
|2| dealer's offensive language in the breakroom. (*Id.* at 3). Afterwards, the dealer coordinator |
|3| gave her a written warning. (*Id.*). Later, Plaintiff informed the tournament director that |
|4| another employee verbally abused her, and that the breakroom smelled like marijuana. (*Id.* |
|5| at 4). After she made these reports, several WSOP employees made damaging statements |
|6| about Plaintiff's dealing skills and attitude. (*Id.*). Defendant did not rehire Plaintiff when |
|7| she applied to deal the Rio WSOP again in 2016, 2017, and 2018. (*Id.* at 2–3). The WSOP |
|8| Circuit at Harrah's Atlantic City hired her in 2016, however, as did the Goliath Poker |
|9| Tournament in 2017, 2018, and 2019. (*Id.*). Plaintiff asserts that Defendant lacked any |
|10| evidence or reasoning for not rehiring her. (*Id.* at 5). She further claims that Defendant |
|11| caused her "substantial money damages" and "emotional distress" by conspiring not to |
|12| rehire her. (*Id.* at 3–8). |

## II. DISCUSSION

Defendant filed the pending Motion to Dismiss under Rules 12(b)(1), lack of subject-matter jurisdiction, (b)(2), lack of personal jurisdiction, (b)(3), improper venue, and (b)(5), insufficient service of process. Alternatively, Defendant moves to transfer the case to the United States District Court for the District of Nevada in the "interest of justice" under 28 U.S.C. § 1406(a). The Court will address personal jurisdiction first. If the Court lacks jurisdiction, the Court need not proceed with further analysis.

### A. Personal Jurisdiction

When an Arizona court of general jurisdiction has jurisdiction over a defendant, so does this Court. *See* Fed. R. Civ. P. 4(k). Arizona law provides for personal jurisdiction to the extent allowed by the Constitution of the United States. *See* Ariz. R. Civ. P. 4.2. The Due Process Clause of the Fourteenth Amendment limits a state's power to grant personal jurisdiction over a defendant to a tribunal. *Goodyear Dunlop Tires Operations v. Brown*, 564 U.S. 915, 923 (2011).

Due process requires that a defendant "have certain minimum contacts with . . . [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play

and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). This minimum-contacts framework gives rise to two forms of personal jurisdiction: general jurisdiction and specific jurisdiction. *Bristol-Myers Squibb Co. v. Superior Ct.*, 137 S. Ct. 1773, 1779–80 (2017). Under general jurisdiction, a court can hear any claim against a defendant who can be "fairly regarded as at home" in the state. *Goodyear*, 564 U.S. at 919. Under specific jurisdiction, a court can hear claims related to a defendant's voluntary, in-state activities. *Bristol-Myers Squibb*, 137 S. Ct. at 1780.

When a defendant moves to dismiss a case for lack of personal jurisdiction, the plaintiff bears the burden to establish personal jurisdiction. *Dole Food Co. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002). When a court resolves the issue of personal jurisdiction solely by reference to the parties' moving papers and filed documents, the plaintiff satisfies this burden by making "only a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006) (citation omitted). In such a case, uncontroverted statements in the plaintiff's complaint are taken as true, and conflicts between facts contained in affidavits are resolved in the plaintiff's favor. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

### 1. General Jurisdiction

Generally, an individual is at home where domiciled, while a corporation is at home either where it is incorporated or where it has its principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Plaintiff alleges no facts establishing that Defendant is either incorporated or has its principal place of business in Arizona. She admits in her own complaint that Defendant is a Delaware corporation with its principal place of business in Las Vegas, Nevada. (Doc. 21 at 1). Defendant is neither incorporated in Arizona nor registered with the Arizona Corporation Commission, nor does it own real property in Arizona or have an agent for service here. (Doc. 23-1 at 2–3). Therefore, this Court cannot exercise general jurisdiction over Defendant.

### 2. Specific Jurisdiction

The specific jurisdiction inquiry "focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Walden*, 134 S. Ct. 1121 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)). This analysis is concerned with the defendant's contact—rather than a third party's—with the forum state itself, rather than with a person who resides there. *Id.* at 1122. Therefore, a defendant's mere contact with a plaintiff, without more, is insufficient to support specific jurisdiction. *Id.* at 1223. In the Ninth Circuit, minimum contacts sufficient to justify specific jurisdiction exist where: "(1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privileges of conducting activities in the forum, (2) the claim arises out of or results from defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable." *Pebble Beach*, 453 F.3d at 1155 (quoting *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000)). The plaintiff has the burden of establishing the first two factors. *Schwarzenegger*, 374 F.3d at 802. If the plaintiff makes that showing, the burden then shifts to the defendant to "'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)). In performing a personal jurisdiction analysis, a court looks to purposeful availment when the cause of action lies in contract and to purposeful direction when—as here—the cause of action lies in tort. *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017).

#### a. Purposeful Direction

Under the first prong of the Ninth Circuit test, a defendant must avail itself of, or direct its activities toward, the forum state. *Schwarzenegger*, 374 F.3d at 802. In intentional tort cases, "a forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." *Axiom Foods*, 874 F.3d at 1068. "Single" or "occasional" contacts can support jurisdiction only if they create more than a "random," "fortuitous," or "attenuated" link with the forum. *Walden v. Fiore*, 571 U.S. 277, 286 (2014); *id.* Put

simply, "the plaintiff cannot be the only link between the defendant and the forum." *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015). Specific jurisdiction requires that a plaintiff's injury be uniquely "tethered to" that forum—she cannot merely assert her claim anywhere she happens to reside. *Walden*, 571 U.S. at 290.

Because Plaintiff asserts tort claims only, the Court will apply the purposeful direction test. *Picot*, 780 F.3d at 1212. The purposeful direction, or effects, test requires that a defendant: "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Axiom Foods*, 874 F.3d at 1069 (citation omitted). Plaintiff argues that the business of Defendant's affiliates, its national website, and its general communication with her establish purposeful direction toward Arizona. Her arguments fail.

Even assuming Defendant's occasional, routine communications with Plaintiff satisfy the first element, Plaintiff has not established the second element because Defendant did not target Arizona in any of its conduct. Plaintiff suggests jurisdiction exists simply because Defendant's corporate subsidiaries transact business in Arizona, but she fails to cite any evidence that Defendant's affiliates serve as its "alter ego," or that Defendant controls their "internal affairs or daily operations." *See Ranza v. Nike, Inc.*, 793 F.3d 1059, 1071 (9th Cir. 2015). Plaintiff therefore does not overcome the general rule barring an affiliate's unrelated activity from establishing jurisdiction over its parent company. *See Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 459 (9th Cir. 2007) ("It is well established that, as a general rule, where a parent and a subsidiary are separate and distinct corporate entities, the presence of one . . . in a forum state may not be attributed to the other . . . ."). Therefore, this Court cannot find that Defendant expressly aimed at Arizona just because some of its legally distinct affiliates have done business there.

Plaintiff also cites evidence of Defendant's online presence, but her apparent contention that Arizona has jurisdiction simply because Defendant operates a national website is equally unavailing. Nothing indicates that the website specifically targeted her. "Not all material placed on the Internet is, solely by virtue of its universal accessibility,

expressly aimed at every state in which it is accessed," unless a website is interactive, seeks commercial gain from a limited region, or targets a known forum resident. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1229, 1231 (9th Cir. 2011). Here, Defendant's website provides general information and allows employees to access their payroll, but it does not prioritize or seek contact with Arizona residents specifically. (Doc. 24-1). Nothing more than the vague potential that Defendant's website *could* affect Arizona existed; therefore, the website did not expressly target Arizona. *See also id.* at 1231 (holding that a national website *specifically appealing to and profiting from* a state can establish jurisdiction there); *Pebble Beach Co.*, 453 F.3d at 1158 (holding that an "internet domain name" and "passive website" cannot establish specific jurisdiction on their own).

Plaintiff also fails to establish personal jurisdiction with her one-on-one phone and email communications with Defendant. The Court cannot assume that Defendant intentionally targeted Arizona simply because of routine, occasional interactions with an Arizona resident. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 807 (9th Cir. 2004) (holding that jurisdiction exists where a defendant intentionally targets his harmful conduct—not necessarily where a plaintiff resides); *see also Burger King Corp.*, 471 U.S. at 474 (holding that express aim requires "reasonabl[e] anticipat[ion] [of] being haled into court" in that forum). Without actually targeting Arizona, Defendant could not have foreseen litigation there just because it engaged in generic and remote communications with an Arizona resident. Thus, because Plaintiff has failed to make even a prima facie showing that Defendant specifically aimed at Arizona, she fails to satisfy the second element of the purposeful direction test. The Court, therefore, need not analyze the third element.

Hence, Plaintiff lacks specific jurisdiction in Arizona because Defendant did not purposefully direct its conduct there. The forum-related activity and reasonableness elements need not be considered.

### III. CONCLUSION

Because Plaintiff has failed to establish personal jurisdiction in Arizona, the Court

need not consider Defendant's other grounds for dismissal.

Based on the foregoing reasons,

**IT IS ORDERED** granting Defendant's Motion to Dismiss (Doc. 23) for lack of personal jurisdiction under Rule 12(b)(2). The Clerk of the Court shall enter judgment dismissing this case without prejudice as to the underlying merits of this action.

**IT IS FURTHER ORDERED** denying Plaintiff's Motion for Summary Judgment (Doc. 27) as moot.

Dated this 24th day of September, 2019.

James A. Teilborg
Senior United States District Judge